## Childs v. Hamilton et al.

October 8, 1948.

Troy D. Savage and Geo. R. Smith for appellant.

Allen Scott Hamilton and Harry R. Kurrie, Jr., for appellees.

Opinion of the Court by Judge Latimer—Affirming.

Appellant, C. C. Childs, and Florida Childs were married in 1911. On June 19, 1945, Florida Childs died. During their married life they accumulated several parcels of real estate, some of which were taken in their names jointly with remainder to the survivor, and others in their names jointly as tenants in common. The latter is involved herein.

In 1944, Florida Childs by will devised her undivided ½ interest in the real estate to her husband, C. C. Childs, so long as he remained her widower, but provided that upon his remarriage the property was to be sold and the proceeds of her part were to go to her brothers and sister and to her church. About 9 months after the death of his wife C. C. Childs remarried. This action was then instituted by appellees to enforce the terms of the will. Various pleadings were filed. The action was referred to the Master Commissioner, who found for the plaintiffs on some points and on others for the defendant.

Plaintiffs moved the court to confirm the report. The defendant, Childs, filed exceptions to the report. Before action was taken by the court on the exceptions the parties entered into an agreement with a third party to convey the real estate to that party and agreed that the cost of the action be paid out of the proceeds of the sale, and the balance of the money be distributed as found by the Commissioner.

The plaintiffs then tendered an amended petition wherein settlement of the controversy was alleged and the contract relative to same was filed with the amended petition. Over the objection of the defendant below, the court permitted the filing of the amended petition and adjudged the contract to be an enforcible and valid agreement on the part of all parties, except the defendant, Bessie Mae Ward Childs, wife of appellant.

Appellant advances numerous reasons for, and grounds of, reversal. He strikes first at the alleged error of the court in allowing the amendment to be filed after the case had been submitted. The others go to the defenses made on the hearing before the Master Com-

missioner, chief of which were: That appellant and his deceased wife had entered into a contract to leave the property by will to the other; that the court should raise a constructive trust when there is an enforcible oral agreement to leave property to another by will or otherwise; that appellant paid the consideration for the real estate involved herein, and that while no resulting trust arose, he should be allowed to recover on the grounds of an implied agreement; and that the Commissioner was wrong in concluding that the signature of the appellant's deceased spouse on the contract between them was not genuine.

All questions raised by appellant in his defense and by his exceptions to the Master Commissioner were matters which preceded the contract agreement permitted to be filed with the amended petition. It will be readily observed that if the court was correct in permitting the amendment and contract to be filed, and was further correct in adjudging the contract and agreement to be valid and enforcible, then all the other questions raised must fall with that decision. We, consequently, direct our attention, first, to the amendment and the contract.

Relative to this question, appellant insists, first, that it was error for the court to permit the filing of the amendment at so late a date. He relies upon Moore v. Damron, 157 Ky. 799, 164 S. W. 103, wherein we held that an amended answer tendered after all evidence had been introduced, instructions given, the case argued, and the jury had retired for deliberation, was an abuse of the discretion under Section 134 of the Civil Code of Practice. The other cases cited by appellant hold that an amendment should not be allowed after a verdict is returned. It will be readily seen that the cases above are not applicable here. In the instant case all the hearings had been heard before the Master Commissioner and his report had been filed. Motion was then made for the affirmance of this report. Exceptions to that report were filed, but before action had been taken by the court, the agreement concerning the sale of the property involved in the litigation was entered into.

If appellees are correct in the contention that the action was settled by the compromise agreement, thereby

disposing of the litigation, then a continuation of the litigation to any other form of judgment would be a futility. That an end might be put to the litigation, it was proper to tender the amended petition and set up the settlement of the controversy as per the contract. As stated above, after the exceptions to the Commissioner's report were filed, and upon motion for a confirmation of the Commissioner's report, it appears an opportunity presented itself for the sale of the involved property to J. S. Taylor and Harry Tucker. In order to consummate the sale a contract was entered into by and between J. S. Taylor and Harry Tucker, parties of the first part, and Charles C. Childs and L. Boone Hamilton, agent for the Hamiltons and heirs of Elwood Hamilton, for the sale of the property and distribution of the proceeds.

The pertinent part of the contract as affecting the litigants herein follows:

"It is further agreed that in consideration of the property named in this contract, that the first party are to deposit in escrow at the Bank of Commerce, Lexington, Kentucky, to be made payable to Charles C. Childs, and L. Boone Hamilton, acting as agent for the Hamilton Heirs. It is further agreed that all the parties named in this contract signs and conveys all their interest in the above named property described in this contract. That the second parties upon delivery of deeds are then to pay the sum of $23,000.00 (Twenty Three Thousand Dollars) so that money can be distributed by a judgment that has been rendered down by the Master Commissioner of the Fayette Circuit Court.

"It is further understood by the terms of this contract that Charles C. Childs one of the second parties of this contract, had a half interest in this property, and also, his mortality interest. It is further agreed, that the court costs now in the Fayette Circuit Court, be paid out of this money before it is distributed to the following heirs named in the contract."

It is stated in counsel's brief that the money has been distributed thereunder to all the parties.

The appellant insists that the agreement was not a settlement but only a contract to sell the property. He argues that the provisions of the agreement relative to

the settlement were only "recital" clauses and of no effect. Obviously, this contention is inconsistent with the terms of the agreement above. Appellant contends that the true intention of the parties was that this money should be paid into court rather than to the parties and was to be distributed according to the final judgment that might be rendered by the court. This too is inconsistent in view of the fact that appellant has already accepted and retained his distributable portion.

The courts have long looked with favor upon settlements which put an end to extended litigation. In Nuckols v. Nuckols, 293 Ky. 603, 169 S. W. 2d 828, 829, we stated:

"The question is, Did the petition, as amended, state a cause of action? We think it did. Compromise agreements are favored by law, and, as said in Dexter v. Duncan, 205 Ky. 344, 265 S. W. 832, the law looks with favor upon agreements between two or more persons, who, to avoid a lawsuit, amicably settle their differences on such terms as to them seem fair and reasonable. Such agreements must be supported by a consideration, but courts will not inquire into the adequacy of the consideration if there is something of detriment to one party or benefit to the other, even though slight. It is well settled in this jurisdiction that an agreement of compromise is supported by sufficient consideration where it is in settlement of a claim which is unliquidated, or in the settlement of a claim in dispute, or one which is in doubt."

In Ohio River Contract Co. v. Pennybacher, 168 Ky. 78, 181 S. W. 946, 947, with reference to deciding a question that had been compromised, we said:

"If appellant's position be correct, and the judgment should be reversed, there would be nothing to try upon the return of the case to the circuit court, since the settlement would be a bar to the further prosecution of the action. A reversal would accomplish nothing; an affirmance would benefit nobody.

"The courts do not try academic questions where neither party will be affected by the result. So where, pending the appeal, conditions have arisen that would make the judgment on appeal of no effect, it will be dismissed."

208

In the case of Auction Leaf Tobacco Warehouse v. Burley Tobacco Growers' Co-op Ass'n, 213 Ky. 408, 281 S. W. 185, we said:

"Here the parties admittedly have adjusted all their differences, and the same reasons that justify a dismissal apply alike without reference to whether the compromise was effected before or after submission of the controversy to this court.

"Sections 757 and 758, Civil Code of Practice, make provision for such dismissal and for manifestation of the facts therefor if not already in the record. There is nothing in either section limiting such right to the date of submission, and no apparent reason why it should be so limited. Nor does the fact that a legal question of public interest was involved in the controversy warrant its discussion and decision after the controversy between the parties has been settled."

We conclude, therefore, that the court correctly and properly admitted the amended petition, confirmed the report of the Master Commissioner, and entered the judgment as above.

Wherefore, the judgment is affirmed.