245 A.2d 137.

MARK ANTER, *p.p.a.* vs. LUCILLE G. AMBEAULT.
MARK ANTER, *p.p.a.* vs. ARMAND G. AMBEAULT.
GEORGE ANTER vs. ARMAND G. AMBEAULT.
GEORGE ANTER vs. LUCILLE G. AMBEAULT.

AUGUST 13, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. These are four civil actions brought by minor plaintiff and his father for personal injuries and consequential damages resulting from the alleged negligence of the defendants, father and daughter. The cases were consolidated for trial in the superior court and after a verdict was returned for the defendant in each case, a separate

judgment was entered in accordance with each verdict. The plaintiffs have taken these appeals from the judgments entered below and from the trial justice's decision denying 'their motions for new trials. Since recovery in all four actions depends upon the defendant daughter's liability to the minor plaintiff, we shall treat the cases as if only the minor's case was before us but our conclusion will apply to all four appeals.

At the trial the following facts were not disputed. On the afternoon of March 31, 1964, plaintiff Mark Anter, age five, was playing with a companion Mark Mayben, age six, near the driveway of the yard located next to his home at 135 Sylvian Street in the city of Central Falls. The yard was surrounded in part by a fence, had several garages situated at one end, and a driveway leading onto Sylvian Street. It was owned solely by Mrs. Yvonne Ambeault[1] and was used for parking purposes. Mrs. Ambeault also owned the adjoining tenement in which Mark Anter and his family lived, along with defendants.

At approximately 4:45 p.m. that afternoon, defendant Lucille G. Ambeault, age 18, was returning from work driving an automobile registered to her father. As she approached her yard, intending to make a right-hand turn, she observed an automobile parked close to its entrance on her right. She made a wide turn to avoid it and seeing no one, proceeded forward. Upon entering the driveway, she "felt or heard" a thud and immediately applied the brakes. Unaware of what she had hit, she quickly got out of her car to investigate. Circling the rear of the vehicle, she found Mark Anter pinned beneath it somewhere between the front and rear tires on the passenger side. Mark Mayben was standing close by and was the only disinterested witness to this unfortunate event.

The minor plaintiff has assigned as error numerous rul-

---

[1]The mother of defendant operator.

ings made by the trial justice. Since we believe his contention that the superior court erred in its instructions to the jury is dispositive of this case, we shall confine our opinion to this phase of plaintiff's appeal.

The plaintiff's counsel objected to two different portions in the charge given to the jury. In both instances the trial justice referred to Mark Anter's right to be playing in the lot owned by Mrs. Ambeault. The portions specifically objected to were as follows:

"* * * The plaintiff's attorney in his final argument to you mentioned the fact that the little boy had every right to be in that yard because that's where he lived. As I remember the evidence, that was not the testimony and I ask you to make your decision based on the evidence in this case and not on the attorney's arguments, either plaintiff's argument or the defendant's argument. Remember that this is not a case of Mr. Louis Azar versus Mr. Thomas Gidley and regardless of how well you may think either attorney handled himself in the course of this trial put that aside and decide this case not on the basis of the performance of a lawyer, not on the basis of any sympathy for someone who was injured, not on the basis of any sympathy for any driver, but on the evidence as you have heard from the witness stand and on the law as I shall try to explain it to you."

"The yard in question as portrayed in Plaintiff's Exhibit 1 shows a fenced area with a driveway leading to several garages and there was no evidence introduced that the boy had the right to be playing in that particular yard as though it were a portion of the same yard in which his home was located."

Essentially plaintiff contends that the trial justice's remarks pertaining to his right to be where he was when the accident occurred could have misled or confused the jury. He argues that the trial judge's statements concerning his right to be in the yard and his contemporaneous mention of not recalling evidence introduced at the trial with regards thereto, could have been interpreted by the jury as

an instruction to the effect that it was incumbent on plaintiff to establish his lawful right to play on the Ambeault premises in order for him to prevail in this litigation. We think there is merit to this contention.

The duty of the trial justice to avoid instructions which are misleading or confusing is so firmly established in the law as to warrant no citation of authority. It is elementary law that instructions in his charge should be pertinent to the evidence and the issues raised in the trial of the case. *Carpenter* v. *United Electric Rys.*, 81 R. I. 196, 100 A.2d 850. One court has even held that regardless of the issues raised in the pleadings, it is improper for a trial justice to give instructions which are unsupported by the evidence in the record. See *Powell* v. *C. Hazen's Store, Inc.* (Ky.App.), 322 S.W. 2d 483. Accordingly it has been widely held that a jury should not be charged with respect to defenses neither pleaded nor attempted to be proven. *Cf.* 1 Reid's Branson, *Instructions to Juries* (3d ed.), §115, at 336, and cases cited therein; see also *Guckian* v. *Newbold*, 22 R. I. 279, 47 A. 543. It can hardly be denied that instructions on issues which are not bedded on the evidence have the tendency to mislead or confuse the jury. *Lindberg* v. *Swenson*, 95 N. H. 184, 60 A.2d 458. If it can be shown that the misinstructions did befuddle the jury, there can be no assurance that their verdict was well grounded in law or fact. *Guzzi* v. *Jersey Central Power & Light Co.*, 12 N. J. 251, 96 A.2d 387. Under such circumstances, the error is often deemed harmful and grounds for reversal. *Watson Bros. Transp. Co.* v. *Jacobson*, 168 Neb. 862, 97 N. W.2d 521; *Smith* v. *Housing Authority*, 144 Conn. 13, 127 A.2d 45.

Hence, it is a fairly uniform rule that a trial justice should confine the scope of his instructions so as to deal only with the issues properly raised by the parties at the trial. *Bethel* v. *Thornbrough*, 311 F.2d 201; *Welch* v. *Frisbie Memorial*

*Hospital,* 90 N. H. 337, 9 A.2d 761; see also *Lianos* v. *Andreucci,* 72 R. I. 123, 48 A.2d 343.

There is some division of judicial authority, however, as to whether simply charging a jury on a matter which is not in issue in a case constitutes reversible error. See 1 Reid's Branson, *supra,* §119, pp. 350-53, for an extensive listing of the different rules applied in cases of this type and the jurisdictions which follow them. In our view, reversal is unwarranted where no prejudice resulted to the complaining party. We believe the most prudent test for determining whether or not an erroneous charge is reversible error should turn on whether it can be shown that the jury " 'could have been misled' " to the resultant prejudice of the complaining party. See *Lindberg* v. *Swenson, supra,* at 187, 60 A.2d at 460.

In the instant case we concur in the arguments advanced by plaintiff's counsel that the jury could have been misled by the trial justice's comment that there was no evidence in the case that the boy had a right to be in the yard where the incident occurred. In determining the correctness and clarity of a trial justice's charge, we have said before that the standard we use is not how we would construe the instructions of a trial justice but rather how we believe it would be interpreted by a jury comprised of ordinary intelligent lay persons listening to it at the close of a trial. *State* v. *Reid,* 101 R. I. 363, 223 A.2d 444; *Cinq-Mars* v. *Standard Cab Co.,* 103 R. I. 103, 235 A.2d 81.

Applying this test to the charge under study we believe that the jury could have been innocently deceived into thinking that plaintiff presented no evidence with regard to a necessary element in his case. We are satisfied from our review of the evidence and the transcript that the right of Mark Anter to be in the Ambeault yard was never properly raised as a legal issue in this case. Neither the pleadings nor the evidence unfolded at the trial indicate that

the parties contested the legal character of Mark's presence on the Ambeault premises. The mere statements that plaintiff minor was told by Mrs. Ambeault on more than one occasion not to play in the yard where the collision occurred is neither dispositive nor probative of the boy's "right" to be there. We have studied the transcript with some care and have found no other evidence introduced at the trial which could be said to have placed this question in issue. Furthermore, we note that no instructions were ever sought with regard to this issue by either side—which fact, if nothing else, is consistent with the conclusion that the parties never regarded the rightfulness of Mark Anter being in the Ambeault lot to be a viable issue to be litigated in the present case.

Thus it follows that plaintiff in the posture of this case was not under a burden to establish the rightfulness of his playing in the lot owned by Mrs. Ambeault. If the trial justice thought that this particular point merited some mention in his charge, he should have told the jury that no legal significance should be attached by them to whether Mark was rightfully on the Ambeault premises, because the legal character of his presence on the Ambeault land was not an issue framed by the litigants in this case. Moreover, we note in passing that the charge as it was given could have led the jury to believe that if they found Mark had no right to be where he was when the car struck him— and indeed the trial justice could fairly be said to have suggested such a finding by making reference to the lack of evidence on this point—they were precluded from finding defendant liable for negligence. We therefore firmly believe that the manner in which the trial justice chose to remark on this facet of the case caused plaintiff to be harmfully prejudiced for the reasons set forth above. Instructions that could have misled the jury to the prejudice of a

party constitutes such error as to warrant the necessity of a new trial.

In each case the plaintiff's appeal is sustained and each case is remitted to the superior court for a new trial.

*Louis E. Azar,* for plaintiffs.

*Hinckley, Allen, Salisbury & Parsons, Thomas D. Gidley* of counsel, *Roger A. Beauchemin,* for defendants.